IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EDIZONE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ASIA FOCUS INTERNATIONAL GROUP, INC. d/b/a TALLMENSHOES.COM, a California corporation, and DOES 1 – 50,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT ASIA FOCUS INTERNATIONAL GROUP, INC.'s MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE TRANSFER VENUE**<br><br>Case No. 2:15-cv-00614-JNP-PMW<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Edizone, LLC ("Edizone") brings this action against Defendant Asia Focus International Group, Inc. ("AFIG"), claiming that AFIG has infringed on Edizone's patent. AFIG moves to dismiss on the basis that the court lacks personal jurisdiction over it. Alternatively, AFIG moves to transfer the case to California. The court held a hearing on AFIG's motion on May 6, 2016.

Edizone has met its burden of showing that AFIG has sufficient contacts with Utah to allow the court to exercise personal jurisdiction over its patent claims. Likewise, AFIG has failed to satisfy the high burden for transferring the case to California on convenience grounds. Accordingly, the court DENIES AFIG's motion. (Docket 10).

## FACTUAL BACKGROUND

Edizone is a Delaware limited liability company with its principal place of business in Alpine, Utah. Edizone works to develop new inventions and to patent and then license these inventions to others. AFIG is a company that operates the website "www.Tallmenshoes.com," a

wholly owned subsidiary of AFIG, from which it sells footwear and related products. AFIG sells its products online to customers throughout the world, including in the State of Utah. The dispute in this case arises from the online sales of honeycomb gel insoles that allegedly infringe on a patent developed by Edizone. Both parties agree that AFIG sold thirty-seven units of the allegedly infringing product to Utah residents. These sales all occurred between August 2012 and December 2015 through the website www.Tallmenshoes.com. Edizone asserts that the allegedly infringing honeycomb gel products were offered for sale on this website, which provided descriptions, prices, and a means to actually order the product directly from the website.

In support of its motion to dismiss for lack of personal jurisdiction, AFIG offers an affidavit by its vice president detailing its lack of contacts with Utah. AFIG is a California corporation. Its principal place of business is located in South El Monte, California. AFIG does not maintain a regular or established place of business in Utah. AFIG has no employees or bank accounts in Utah and ships all of the products it sells out of its warehouse in California. Edizone offers no evidence to contradict these assertions.

## DISCUSSION

**I.     The Court May Exercise Personal Jurisdiction Over AFIG for Edizone's Patent Infringement Claims.**

Whether a court may exercise personal jurisdiction over a defendant depends on the defendant's contacts with the forum state. Those contacts may give rise to either general or specific personal jurisdiction. A party is subject to general personal jurisdiction only when its "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 755 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). In this case, the parties agree that AFIG's limited contacts with Utah are insufficient to give rise to

general personal jurisdiction. Accordingly, the court's analysis is confined to specific personal jurisdiction.

Specific personal jurisdiction exists only when the plaintiff's claims arise out of the defendant's contacts with the forum. To determine whether the court has personal jurisdiction over AFIG, the court must first determine whether to apply Tenth Circuit or Federal Circuit law. Both circuits agree that where, as in Utah, "the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (explaining that the Federal Circuit defers "to the interpretation of a state's long-arm statute given by that state's highest court"); *Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999) (explaining that the Utah long-arm statute extends to the fullest extent permitted by due process). Because Edizone raises only patent-related claims, Federal Circuit law governs the due process analysis for personal jurisdiction. *3D Sys.*, 160 F.3d at 1377 (explaining that for patent-related claims "when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies").

Under Federal Circuit law, the plaintiff bears the initial burden of establishing personal jurisdiction. *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). But where a motion to dismiss is made with no request for an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Id.* at 1349. The plaintiff may carry this burden by demonstrating, via affidavit or other evidence, facts that, if true, would support jurisdiction over the defendant. *Id*. Any factual disputes must be resolved in

the plaintiff's favor. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

Under Federal Circuit law, when specific personal jurisdiction has been contested, the inquiry is "whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). Edizone argues that the court has specific personal jurisdiction over AFIG for its patent-related claims because AFIG sold thirty-seven units of the allegedly infringing product to customers in Utah through an interactive website maintained by AFIG. With these facts in mind, the court addresses each of the three factors identified by the Federal Circuit.

### A. AFIG purposefully directed its activities at Utah residents.

First, the court must determine whether AFIG's website and the 37 sales into Utah amount to purposeful availment of the Utah forum. "By its very nature, the internet allows individuals and businesses to create a presence that is visible throughout the United States and the world. Even so, 'one cannot purposefully avail oneself of some forum someplace.'" *Kindig It Design, Inc. v. Creative Controls, Inc.*, Case No. 2:14-cv-00867-JNP-BCW, 2016 WL 247574, at *6 (D. Utah Jan. 20, 2016) (quoting *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir.2002)). In *Kindig It Design, Inc. v. Creative Controls, Inc.*, Case No. 2:14-cv-00867-JNP-BCW, 2016 WL 247574 (D. Utah Jan. 20, 2016), this court held that maintaining a website capable of accepting orders from the forum state was insufficient by itself to establish purposeful availment where there was no evidence that forum residents had accessed the website or made any online purchases destined for the forum state. *See id.* at *8. Because *Kindig It Design* did not involve a single sale in the

forum state, it did not require an analysis of whether there is any threshold on the number of sales required to satisfy the purposeful availment prong of the test for specific personal jurisdiction. *See id.*

AFIG acknowledges that it sold thirty-seven units of the allegedly infringing product into Utah. But it argues that these sales amount to only *de minimis* contacts with the forum state and therefore do not support a finding of purposeful availment. AFIG asserts that there is no evidence that it targeted the Utah market. AFIG contends that Utah consumers had to go searching for its website and thus reached out to it, rather than the other way around. Finally, AFIG argues that a ruling adopting *de minimis* online sales as the linchpin for personal jurisdiction would eviscerate the traditional geographic limitations on a state's ability to exercise jurisdiction over foreign defendants. *See Kindig It Design*, 2016 WL 247574, at *5.

The court disagrees. AFIG's contacts with the Utah forum are significant enough to show purposeful availment. Both parties agree that thirty-seven units of the allegedly infringing product were sold into Utah. These Utah residents accessed AFIG's website from Utah and interacted with it by providing Utah billing and shipping addresses with their orders, which were then accepted and processed by AFIG. Reaching out from California, AFIG filled these orders and shipped the allegedly infringing product to the Utah customers' addresses from its warehouse in California. As a result of AFIG's actions, ongoing relationships were formed with Utah forum residents regarding the allegedly infringing products. Customers were provided with AFIG contact information and AFIG stored its customers' information. These sales occurred for at least three and a half years. Thus, it may reasonably be inferred that, because AFIG was directly processing orders from and shipping orders to Utah for such an extended period of time, AFIG was aware of its continued availment "of the privilege of conducting business" in Utah. *See*

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Finding purposeful availment under these circumstances does not erase traditional geographic limitations on a state's exercise of personal jurisdiction. To the contrary, the court's finding is grounded not in AFIG's use of an interactive website, but in AFIG's actual and intentional contacts with the forum state.

> B. **Edizone's claims arise from AFIG's activities in the forum state.**

Second, the court must determine whether Edizone's cause of action arises out of or relates to AFIG's activities in the forum state. *3D Sys.*, 160 F.3d at 1378. Edizone is suing AFIG for patent infringement. Patent infringement occurs when someone "without authority makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). Edizone asserts that AFIG both offered to sell the infringing product to Utah consumers and in fact did sell thirty-seven units of the infringing product to Utah consumers.

Edizone's claims arise out of sales of the allegedly infringing products to Utah consumers. Under Federal Circuit law, a claim for patent infringement based on sales of an allegedly infringing product occurs at the location "where allegedly infringing sales are made." *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578–79 (Fed. Cir. 1994). The location of a sale for purposes of patent infringement includes both the location of the shipper and the buyer. *See id.* at 1579 ("We hold that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there)."); *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1369–70 (Fed. Cir. 2008).

In this case, AFIG acknowledges that thirty-seven units of the allegedly infringing product were purchased by Utah consumers through its website and that the orders were shipped directly by AFIG to the Utah residences of these purchasers. Under Federal Circuit law, these sales were made in Utah for purposes of Edizone's patent infringement claims (though not necessarily only in Utah).

6

AFIG asserts that even accepting the fact that 37 sales took place in Utah, Edizone's claim still does not arise out of these contacts. Specifically, AFIG argues that a claim for patent infringement does not arise out of the contact with the forum state unless a substantial number of the sales of the allegedly infringing product occurred within the forum state. Because the Utah sales amount to less than one percent of AFIG's total sales of the allegedly infringing product, AFIG argues the exercise of specific personal jurisdiction over AFIG in Utah is improper. AFIG supports this theory by citing to several district court decisions from courts located within the Seventh Circuit. Of these, *Connecticut Electric, Inc. v. Pacific Coast Breaker, Inc.*, No. 1:10-CV-01440-LJM, 2012 WL 626269 (S.D. Ind. February 24, 2012), best explains AFIG's theory:

> Even if all seventy orders for Zinsco-type breakers were filled with allegedly infringing breakers, it constitutes only $3,780.00 in sales, or approximately .012% of PSB's total revenue since 2005. At minimum, PCB sold 1,700 allegedly infringing breakers. Accordingly, the maximum percentage of allegedly infringing breakers sold in Indiana is 4.1%. These sales alone are not enough to constitute "substantial" contacts of the type required by the Constitution. *See Richter v. Instar Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1007 (N.D. Ill. 2009) (Kapala, J.) (collecting cases). Indeed, specific personal jurisdiction based upon the sales of allegedly infringing breakers to Indiana residents alone "would really prove too much: It would hale any asserted infringer of a claimed intellectual property right into a remote forum based upon truly *de minimis* contacts." *See Guinness World Records, Ltd. v. Doe*, 664 F.Supp.2d 927, 929 (N.D. Ill. 2009) (Shadur, J.) (concluding that nominal sales of an allegedly infringing product in the forum state, without more, are not substantial contacts for the purpose of due process in the context of specific personal jurisdiction).

*Id.* at *3. AFIG argues that this theory is consistent with *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994), where the Federal Circuit noted that the defendants "placed a substantial quantity of infringing articles into the stream of commerce conscious that they were destined for Illinois." 35 F.3d at 1580.

The court is not persuaded that the theory in *Connecticut Electric* accurately states the governing law. While the Federal Circuit in *North American Philips Corp.* did note the existence

of a "substantial quantity of infringing articles" being imported into the forum state, it did not indicate that this was a legal prerequisite to the exercise of specific jurisdiction. *See id.* Rather, in laying out the legal framework for its specific personal jurisdiction analysis, the Federal Circuit noted that the Supreme Court has "emphasized the importance of the quality as opposed to the quantity of the contacts, examining whether the contracts resulted from the 'purposeful' activity of the defendant." *Id.*

Here, while there may only have been thirty-seven sales in Utah, the record is clear that these sales involved "purposeful activity" by AFIG. Specifically, AFIG accepted orders it knew were coming from Utah billing addresses, fulfilled these orders by shipping the allegedly infringing product to Utah residences, provided Utah consumers with AFIG's contact information so that they could contact AFIG regarding any issues with their orders, and maintained Utah consumer's contact information in its databases. AFIG engaged in these activities over the course of several years. It can hardly be said that AFIG's contacts with Utah were unintentional or only incidental. While the Utah sales may not have been a large portion of AFIG's overall business, each of the contacts revolved around a sale of the allegedly infringing product out of which Edizone's claims for patent infringement arise.

In addition to the foregoing, the court notes one final reason for rejecting the *Connecticut Electric* approach advocated by AFIG. Because this theory focuses on the percentage of total sales made in the forum state, it can lead to bizarre results. At oral argument, AFIG acknowledged that under its theory, an infringer who makes only one online sale of the allegedly infringing product would be subject to jurisdiction in the customer's forum state. In such a case, 100% of the sales are to the forum state giving rise to jurisdiction. If, however, the infringer goes on to sell an additional thousand units to a second state, the single sale in the original state would

become *de minimis* as a percentage of total sales. Under AFIG's theory, these subsequent sales would divest the original state of personal jurisdiction. This is an illogical result. It makes no sense that an infringer who violates patent law once is subject to personal jurisdiction but that same infringer is able to divest the court of jurisdiction by choosing to engage in additional violations of the law in other states. Accordingly, the court finds that the second prong of the analysis has been satisfied. Edizone's claims arise out of AFIG's contacts with the forum state.[1]

### C. The assertion of personal jurisdiction over AFIG is both reasonable and fair.

Finally, the court must determine whether "assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville*, 552 F.3d at 1332 (quoting *Breckenridge Pharm.*, 444 F.3d at 1363). The burden is on the defendant to prove why jurisdiction would be constitutionally unreasonable. *3D Sys.*, 160 F.3d at 1379–80. (Fed. Cir. 1998). In making this determination, the court must consider, "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980).

Upon weighing these factors, the court concludes the exercise of jurisdiction in this case is both reasonable and fair. Federal Circuit law governs any patent infringement dispute, regardless of whether the case is heard in California or Utah. Furthermore, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World–Wide Volkswagen*, 444 U.S. at 294 (quoting *Hanson v. Denckla*, 357 U.S.

---

[1] Because the court finds that Edizone's claims arise out of the thirty-seven actual sales to Utah consumers, the court need not address Edizone's alternative argument that the alleged offers to sell to Utah consumers satisfy the requirement that the claim arises from activities directed at the forum state.

9

235, 250–51 (1958)). With the many daily flights between California and the forum state, the burden on AFIG is "relatively minimal." *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed. Cir. 2002) (finding the burden on a Canadian defendant subject to suit in Kansas was "relatively minimal"). Accordingly, the court finds that AFIG has failed to meet its burden of showing why the exercise of jurisdiction would be constitutionally unreasonable.

For the foregoing reasons, the court concludes that Edizone has met its burden to properly allege the basis for the court's exercise of personal jurisdiction over AFIG. Moreover, AFIG has failed to demonstrate why the exercise of personal jurisdiction over it in this case would be improper. Accordingly, the court has personal jurisdiction over AFIG.

## II.  Venue is Proper

In the event its motion to dismiss is denied, AFIG alternatively argues that the venue is improper or that the court should transfer the case to the Central District of California because the current forum is not convenient for the defendant and witnesses. Under 28 U.S.C. §1400(b), "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Corporate defendants are deemed to "reside" anywhere they are subject to personal jurisdiction at the time the action commenced. 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). Accordingly, venue is proper in this district because AFIG is subject to personal jurisdiction here.

Alternatively, AFIG argues that the case should be transferred because the current forum is inconvenient. Under 28 U.S.C. § 1404(a), "[A] district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Such a transfer should occur only "[f]or the convenience of

parties and witnesses, in the interest of justice." *Id.* Here, AFIG asserts that venue would be proper in California and that California is the most convenient venue for litigating the parties' dispute.

Because this is a patent case, Federal Circuit case law controls the transfer of venue issue. *See* 28 U.S.C. § 1295. In determining whether venue is proper, the Federal Circuit looks to regional circuit law. *In re Vista Print Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). In the Tenth Circuit, a district court should consider the following factors in determining whether to transfer venue under § 1404(a):

> [T]he plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulfur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)). Because it is AFIG's burden to prove that the District of Utah is an inconvenient forum, it must establish that these factors weigh strongly in favor of transferring this case. *Tex. Gulf Sulfur*, 371 F.2d at 147. AFIG cannot meet its burden by simply shifting any inconvenience from itself to Edizone. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

AFIG has not met its burden to show that Utah is an inconvenient forum. Distilled to their essence, AFIG's arguments are that all of its operations are located in California and not Utah. But given the nature of this case, that fact alone fails to demonstrate why Utah is an inconvenient forum or why the case should be transferred to California. This is a patent infringement case involving a shoe insole. The bulk of the issues involve whether AFIG's

product infringes Edizone's patent. And the remaining issues, regarding the number of insoles sold, involve documents that can be easily accessed electronically. AFIG has already produced electronic records regarding the product and its sales to Utah residents, and it has made no argument that it could not just as easily electronically produce all sales records. And while AFIG generally asserts that all of its witnesses are in California, it has not identified them or specified how many witnesses would have to travel. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010). Because these witnesses are presumably AFIG employees within AFIG's control, issues of compulsory process are of less significance. *See id.* Moreover, transferring the case would require Edizone and its witnesses to travel to California. AFIG has not shown how the expense and inconvenience for Edizone to litigate in California would be any less than AFIG's inconvenience in litigating in Utah.

Ultimately, the court finds that AFIG has failed to carry its burden of showing that the Utah forum is inconvenient enough to warrant a transfer of venue to California. Accordingly, the court DENIES AFIG's motion to transfer the case to the Central District of California.

## CONCLUSION

Edizone has satisfied its burden to show that this court has personal jurisdiction over AFIG with respect to the patent infringement claims and that venue is appropriate in this district. AFIG has failed to meet its burden with respect to its motion to transfer the case on convenience grounds. Accordingly, AFIG's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue is DENIED.

Signed July 21, 2016.

                BY THE COURT

                _____
                Jill N. Parrish
                United States District Court Judge